# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16CV810

| | |
|---|---|
| TAMMY LATRELL GILCHRIST, | ) |
| | ) |
|           **Plaintiff,** | ) |
| | ) |
| v. | )    **ORDER** |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|           **Defendant.** | ) |
| | ) |

This matter is before the Court on the parties' cross motions for summary judgment (# 8, 9). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Plaintiff's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.

**I.    Procedural History**

On January 2, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 11.) On the same day, Plaintiff filed a Title XVI application for supplemental security income. (T. 11.) In both applications, Plaintiff alleged a disability onset date of December 20, 2012. (T. 11.)

The Social Security Administration denied Plaintiff's claims initially on March 7, 2013, and her claims were denied upon reconsideration on April 18, 2013. (T. 11.) On June 4, 2013, Plaintiff filed a written request for a hearing. (T. 11.)

On January 8, 2015, a hearing was held before an Administrative Law Judge ("ALJ") in

Charlotte, North Carolina.[1]  (T. 11.)  On April 13, 2015, the ALJ issued a decision finding that Plaintiff was not disabled from December 20, 2012, through the date of his decision, April 13, 2015.  (T. 22.)

Plaintiff requested review of the ALJ's April 13, 2015, decision.  (T. 1.)  The Appeals Council denied Plaintiff's request for review.  (T. 1-4.)  On November 23, 2016, Plaintiff filed the instant action seeking review of the Commissioner's final decision.  See Compl. (# 1).

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).  Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether  the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make

---

[1] Plaintiff appeared and testified at the January 8, 2015, hearing.  (T. 11.)  A vocational expert also appeared at the hearing.  (T. 11.)

2

the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a vocational expert ("VE"), who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

In his April 13, 2015, decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (T. 22.) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

(2) The claimant has not engaged in substantial gainful activity since December 20, 2012, the alleged onset date (20 C.F.R. §§ 404.1571, et seq., and 416.971 et seq.).

(3) The claimant has the following severe impairments: lumbar degenerative disc disease, fibromyalgia, headaches, and positive HIV (human immunosuppressive virus) (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5) The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she must be permitted the option to sit/stand at one hour intervals, is limited to occasional climbing and balancing, and should avoid concentrated exposure to moving machinery and unprotected heights.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).[2]

(7) The claimant was born on July 7, 1974, and she was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

(8) The claimant has at least a high school education, and she is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and RFC, there

---

[2] Plaintiff has past relevant work as a science teacher. (T. 20.)

are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2012, through April 13, 2015 (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(T. 11-22.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Discussion

---

[3] The VE testified that Plaintiff would be able to perform the requirements of "light" representative occupations such as the following: clerk, which has 900,000 jobs nationally; office helper, which has 200,000 jobs nationally; and inspector, which has 430,000 jobs nationally. (T. 21.)

### A. The ALJ erred by failing to address whether Plaintiff's HIV "medically equaled" Listing § 14.08.

In Plaintiff's second and most compelling argument, she argues that the ALJ erred by failing to address whether her HIV "medically equaled" Listing § 14.08. Pl.'s Mem. Supp. (# 8-1) at 13. Plaintiff contends that the ALJ's failure to address this matter was "clearly erroneous." Id. Plaintiff concludes that, in light of the evidence, the Court should reverse this claim for an award of benefits. Id.

At step three in the sequential evaluation, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or medically equals one of the listed impairments, the claimant is considered disabled, without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); see Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) ("A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition meets or equals the listed impairments.") (quotation omitted)).

A claimant's impairment "medically equals" a listing when "it is at least equal in severity and duration." 20 C.F.R. §§ 404.1526(a), 416.926(a). When making this determination, the ALJ will evaluate all medical evidence in the case record and also consider the opinion(s) from medical/psychological consultant(s). 20 C.F.R. §§ 404.1526(c), 416.926(c).

A review of the record reveals that with respect to Listing § 14.08, the ALJ's analysis in its entirety provides as follows: "The claimant has positive HIV. However, she has not suffered from the opportunistic infections, neoplasms, encephalopathy, wasting syndrome or other

symptoms associated with this condition as required in Section 14.08." (T. 15.)

The ALJ failed to specifically address whether Plaintiff's HIV "medically equaled" Listing § 14.08, the Listing for HIV. The Commissioner argues that the ALJ's bolded finding that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)" (T. 14) is sufficient to address the issue of medical equivalence. Comm'r's Mem. Supp. (# 10) at 7.

The Court is not persuaded that the ALJ's analysis was sufficient. While it is possible that the ALJ, on remand, may properly found that Plaintiff's HIV does not "medically equal" Listing § 14.08, the ALJ committed legal error by failing to address the issue. As the Fourth Circuit Court of Appeals has said, an ALJ must "[s]how [his] work." See Patterson v. Comm'r of Soc. Sec., 846 F.3d 656, 663 (4th Cir. 2017).

In sum, the ALJ's failure to address whether Plaintiff's HIV medically equaled Listing § 14.08 warrants remand. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

**B.  The ALJ further erred by failing to comply with 20 C.F.R. §§ 404.1527, 416.927 and SSR 96-2(p) by not assigning appropriate weight to the opinions offered by Drs. Kirkland, Park, and Harley, Plaintiff's long-term treating physicians.**

In Plaintiff's third argument, she argues that the ALJ erred by failing to assign appropriate weight to the opinions offered by long-term treating physicians Drs. Park, Kirkland, and Harley. Pl.'s Mem. Supp. (# 8-1) at 13-17. Plaintiff concludes that this Court should reverse this claim for an award of benefits. Id. at 17.

The Regulations provide as follows with respect to the Social Security Administration's

7

criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[4] The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration: (1) length of treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 781 (D.S.C. Aug. 23, 2017). As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013).

SSR 96-2p[5] provides that when

> a treating source opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4. SSR 96-2p further requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the

---

[4] This reflects the Regulation as it stood on the date of the ALJ's decision, April 13, 2015.
[5] With respect to claims filed after March 27, 2017, the Regulations have been amended and SSR 96-2p has been rescinded. Cohen v. Berryhill, No. 2:16-CV-01238-RMG-MGB, 2017 WL 3638229, at *5 n.6 (D. S.C. July 31, 2017). The instant case was filed before March 27, 2017; thus, the Court has analyzed Plaintiff's claim under the treating physician rule set forth above.

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Id. at 5.

In the instant case, Plaintiff was treated by Richard I. Park, M.D., Kenesha Kirkland M.D., and William B. Harley, II, M.D. As outlined below, each of these doctors opined that Plaintiff's impairments imposed limitations that rendered her unable to work, and these opinions were discounted in favor of the opinions offered by Hari Kuncha, M.D., a State agency record reviewing physician. (T. 19-20.)

Plaintiff suffers with inoperable lumbar spondylosis and back and leg pain. (T. 388.) On February 21, 2012, Dr. Park, a pain specialist, noted that Plaintiff suffers with chronic lower back pain and bilateral legal pain from spondylosis. (T. 392.) Plaintiff was evaluated by a spine surgeon, Anthony J. Kwon, M.D., who believed spine surgery would not be beneficial and recommended other therapies, such as spinal cord stimulation therapy. (T. 392.) Plaintiff has failed conservative measures and is on chronic opioid therapy, which is helpful for a short period of time. (T. 392.) Plaintiff experiences increased pain in the afternoon and late evening. (T. 492.) In sum, Plaintiff's back pain and leg pain persists, her pain is worse with activity, and her quality of life is "poor." (T. 392.)

On April 24, 2012, Plaintiff underwent the implantation of a spinal cord stimulator. (T. 383.) On October 30, 2013 and February 20, 2014, Dr. Kirkland, a primary care physician, noted that Plaintiff had been a patient of the practice since March 6, 2008. (T. 723, 725.) Plaintiff was previously seen by a colleague and established as a patient with Dr. Kirkland on July 5, 2013. (T. 723, 725.) Dr. Kirkland agreed with the statement that Plaintiff has degenerative disk disease of the lumbar spine with chronic pain, costochondritis, and fibromyalgia. (T. 723, 725.) As a result

of Plaintiff's condition, she cannot engage in substantial gainful activity on a regular basis. (T. 723, 725.) Plaintiff would need to occasionally lie down on an unscheduled basis several times throughout the day for 20-30 minutes at a time. (T. 723, 725.) Should Plaintiff attempt work activity, she would experience an absentee rate of at least 3-4 days per month as a result of her symptoms. (T. 723, 725.)

On December 11, 2014, Dr. Kirkland noted that Plaintiff has a history of lumbar spondylosis, HIV, migraines, and fibromyalgia. (T. 726.) Plaintiff suffers with chronic back pain and muscle spasms, and her pain medication is monitored by pain management. (T. 726.) In sum, Plaintiff's physical capacity is lessened, and she is not able to provide gainful work in an employment setting. (T. 726.) Plaintiff's migraines are followed by a neurology specialist. (T. 726.) Based on the frequency of Plaintiff's migraines, it is likely she would have an excessive absentee rate such that employment would not be feasible. (T. 726.)

Dr. Harley, a treating infectious disease specialist, followed Plaintiff for HIV. (T. 892, 896, 898, 900, 904, 907, 909.) Dr. Harley opined that Plaintiff suffered with HIV, nausea, and depression. (T. 883, 886.) On December 12, 2014, Dr. Harley handwrote a note that states the following: "Ms. Tammy Gilchrist meets medical criteria for permanent disability due to a combination of fibromyalgia, HIV, and chronic nausea." (T. 919.)

On May 6, 2015, Dr. Harley submitted a letter, which states that he has treated Plaintiff for many years, and she has not been able to work for years due to medical reasons. (T. 948.) Dr. Harley notes that Plaintiff was recently denied disability because of a high CD4 count and no history of opportunistic infections or other AIDS-related complications. (T. 948.) Dr. Harley notes that HIV impacts the body in many ways other than through the suppression of the immune system. (T. 948.) For instance, HIV causes fatigue due to chronic inflammation. (T. 948.) Also,

the medications required to control HIV may cause complications as well. (T. 948.) Plaintiff suffers from chronic nausea, which has required medication treatment for years, and fibromyalgia, which causes diffuse and debilitating pain. (T. 948.) Dr. Harley concludes that Plaintiff has some very significant health issues that will not improve, even with optimum medical management. (T. 948.)

The ALJ recognized that Drs. Harley, Kirkland, and Park are Plaintiff's treating physicians. (T. 19.) The ALJ further recognized that the opinion of a treating physician is entitled to "substantial weight" unless there is persuasive contradictory evidence. (T. 19.) The ALJ noted the opinions of Drs. Harley, Kirkland, and Park, which provide that Plaintiff is permanently disabled and unable to engage in substantial gainful activity, are never entitled to controlling weight. (T. 19.)

In finding that Plaintiff's lumbar disc disease, fibromyalgia, headaches, and HIV are severe impairments, the ALJ gave "significant weight" to the opinions offered by Drs. Harley, Kirkland, and Park. (T. 19.) The ALJ gave "little weight" to the treating doctors' disability statements and to the specific functional limitations they imposed on Plaintiff because they are inconsistent with other evidence in the record, including their own treatment notes. (T. 19.)

The ALJ justified his decision to discount the opinions offered by Drs. Harley, Kirkland, and Park with the following explanation: Drs. Kirkland and Park indicate only that Plaintiff experienced "some pain" from her lumbar disc disease and fibromyalgia. (T. 19.) Plaintiff's pain was helped with medication and other pain management techniques. (T. 19.) Neither doctor provided objective clinical evidence to support their opinions regarding the functional limitations they imposed. (T. 19.) Plaintiff had myofascial tenderness, but she was in no acute distress. (T. 19.) Limited range of motion of the spine was indicated only twice. (T. 19.) Plaintiff's gait, upper

11

and lower extremity, and neurological exams were consistently normal. (T. 19.) Plaintiff indicated she was tolerating Nucynta, her pain medication, without adverse side effects. (T. 19.) The opinions offered by Drs. Kirkland and Park are inconsistent with Plaintiff's activities of daily living. (T. 19.)

Dr. Haley's notes reveal that Plaintiff's HIV was both "stable and asymptomatic." (T. 19.) The objective evidence does not reveal that Plaintiff had problems associated with hand blisters or difficulty using her upper extremities. (T. 19.) Plaintiff complained of "some" nausea and fatigue, but Plaintiff's medical records and daily activities do not reflect that these symptoms were as frequent or as severe as alleged. (T. 19.)

After discounting the opinions offered by Drs. Harley, Kirkland, and Park, the ALJ concluded as follows: "In the absence of a specific functional capacities evaluation completed by a treating physician, I have given more weight to the findings of the State agency medical consultant. As those of nonexamining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the Social Security Act." (T. 19-20.)

"[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178. Similarly, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

For the reasons outlined below, the Court concludes that the ALJ's decision to discount three long-term treating doctors, two of which are specialists, each who believed Plaintiff's impairments rendered her unable to perform substantial gainful activity, and rely on one

nonexamining physician, is not persuasive.

First, the Court notes that Dr. Park, a specialist in a pain, and Dr. Harley, a specialist in infectious disease, were entitled to greater weight.[6] See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Second, in weighing Dr. Park's and Dr. Harley's medical opinions, the ALJ should have but failed to consider that both doctors are specialists in their field. See Johnson, 434 F.3d at 654.

Third, the ALJ notes that Drs. Kirkland and Park indicate only that Plaintiff experienced "some pain" from her lumbar disc disease and fibromyalgia, and Plaintiff's pain was helped with medication and other pain management techniques. (T. 19.) The ALJ's attempt to discount the pain Plaintiff experiences is not credible in the light of the fact that she is treated regularly by a pain specialist, Dr. Park. (T. 375-410.) In fact, Dr. Park noted that Plaintiff has <u>failed</u> conservative measures and is on chronic opioid therapy. (T. 404.)

In sum, the ALJ's failure to give proper weight to the opinions offered by Drs. Kirkland, Park, and Harley warrants remand. See Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 8) is GRANTED, and the case will be remanded for further proceedings.[7] The Commissioner's motion for summary

---

[6] It appears that Dr. Kuncha is a specialist in physical medicine and rehabilitation.

[7] Plaintiff moves for the Court to reverse the decision of the Secretary and enter summary judgment in her favor and award her Title II disability benefits, or in the alternative, to remand this matter to the Secretary for further proceedings. Pl.'s Mot. Summ. J. (# 8) at 1. Reversal for an award of benefits is appropriate when "[o]n the state of the record, [Plaintiff's] entitlement to benefits is wholly established." Crider v. Harris, 624 F.2d 15, 17 (4th Cir. 1980). In this case, the Court cannot say that Plaintiff's "entitlement to benefits is wholly established." Id. Therefore, the Court will remand the case for further proceedings.

judgment (# 9) is DENIED.

Signed: March 12, 2018

Dennis L. Howell
United States Magistrate Judge